433 So.2d 133 (1983)
George T. TWEEDEL, et ux
v.
Elrick BRASSEAUX, et al.
No. 82-C-2681.
Supreme Court of Louisiana.
May 23, 1983.
Rehearing Denied June 24, 1983.
Lawrence B. Sandoz, Jr., Lester Schiff, Sandoz, Sandoz & Schiff, Opelousas, for applicants.
Malcolm Brasseaux, Church Point, for respondents.
WATSON, Justice.
In contest is the validity of three donations inter vivos of immovable property. George T. Tweedel and his wife, Lillian Fontenot, gave Elrick Brasseaux,[1] his wife, Hester Tweedel, and their three children the naked ownership of a one hundred twenty-six acre tract of land. The Court of Appeal affirmed a trial court judgment[2] rescinding the donations. Tweedel v. Brasseaux, 420 So.2d 1305 (La.App. 3 Cir.1982). *134 A writ was granted to review the judgment. 423 So.2d 1169 (La., 1982).

FACTS
Hester Tweedel Brasseaux is the niece of George T. Tweedel, "Uncle G.T.", being the daughter of Mr. Tweedel's brother who died at an early age. Hester; Elrick, her husband; and their children, Charles, Larry, and Charlene Brasseaux Miller; live in the Opelousas-Ville Platte area. Mr. Tweedel and his wife live in China, Texas, a small town near Beaumont.
Mr. Tweedel and his wife were the owners of a one hundred twenty-six acre tract of land located partly in Acadia Parish and partly in St. Landry Parish. Because the property produced oil, the Tweedels accumulated a large sum of cash in various banks before production ceased. Hester said Uncle G.T. had told her he wanted her to have the Louisiana tract after his and his wife's death because her father had died so young. By the Brasseauxs' account, Uncle G.T. called late in 1977 and instructed them by telephone to pick up a copy of the deed at his home and then have their lawyer draw a will giving them the property. Hester testified that the property description was obtained on a visit to Uncle G.T.'s home in China. Several days later she consulted attorney Albert John Boudreaux of Opelousas. According to Hester, attorney Boudreaux or his partner, Mr. Pavy, now deceased, called Uncle G.T. and recommended, because of inheritance tax considerations, a donation in lieu of a will. It was proposed that the Tweedels donate the property over a period of three years and reserve the usufruct. Mr. Boudreaux testified that, while his memory of the events was not precise, he thinks that Mr. Pavy talked to Mr. Tweedel and he is certain that he would never have prepared the donations without authorization from Tweedel. Attorney Boudreaux then drafted three identical documents which collectively donated the Louisiana acreage from Mr. and Mrs. Tweedel to Mr. and Mrs. Brasseaux and their children, reserving the usufruct and the right of use of the property to the Tweedels for their lifetimes.[3] It was specified that "these donations are made in consideration of the natural love and affection which the donors bear unto them and also to improve their financial positions, and the donees accept the donations as made to them with love and gratitude and acknowledge delivery and possession thereof for themselves, their heirs and assigns." (Tr. 54) The documents were to be executed by the Brasseauxs in the presence of witnesses before a notary in St. Landry Parish, Louisiana, and by the Tweedels in the presence of witnesses before a notary in Texas.
Because of the necessity of recordation in both Acadia and St. Landry Parishes, each of the three donations had to be executed in duplicate. One set of two was to be signed at the end of December, 1977, a second set in early January, 1978, and a third set in early January, 1979. Since the Acadia Parish Clerk's Office was closing at noon on December 30, 1977, attorney Boudreaux had the Brasseauxs sign the first set on December 29, 1977. They were instructed to take the papers to the Tweedels early the next morning along with the second set dated January 2, 1978.
On December 30, 1977, Elrick and Hester Brasseaux and their son Charles arrived at the residence of the Tweedels in China, Texas, about 7:00 A.M. Uncle G.T. called his neighbors, Larry and Ida Elliot, to witness the signatures and called Justice of the Peace L.R. Doucette to perform the notarial services. The notary testified that the Tweedels said they understood what they were signing, signed the acts of donation before him and that the witnesses also signed before he notarized the Tweedels' signatures.
Attorney Boudreaux had instructed the Brasseauxs to leave the second set of documents with the Tweedels for execution early in 1978. According to the Brasseauxs, *135 Uncle G.T. insisted that all four be signed on December 30, 1977, in order that he would not be required to later sign and mail the 1978 documents to Louisiana. Thus, the instruments dated December 30, 1977, and those dated January 2, 1978, were signed at the same time by the Tweedels.
The 1977 act of donation was recorded in Acadia Parish prior to the closing of the clerk's office on December 30, 1977, and a duplicate instrument was then recorded in St. Landry Parish.
Acceptance of the January 2, 1978, act of donation was signed on January 3, 1978, in Opelousas before attorney Boudreaux acting as notary. Thus, acceptance of the 1977 donation was signed one day prior to execution by the donors and acceptance of the 1978 donation was one day after execution by the donors.
There is considerable dispute in the record about the signing of the third set of instruments. A preponderance of the evidence reflects that the Brasseauxs went to China on January 6, 1979, with the third set of papers. On this second occasion, the Elliots again acted as witnesses and Judge Doucette served as notary. The Brasseauxs signed the acceptance on January 8, 1979, in Opelousas.
According to Mrs. Tweedel, attorney Boudreaux did not call her husband in 1977, she did not read the instruments before signing them, and she thought she was signing a will. Mrs. Tweedel keeps her family's business records and admitted that she had had a copy of the document in her possession from December, 1977, until trial.
G.T. Tweedel, age ninety-one at the time of trial, testified by deposition that neither attorney Boudreaux nor attorney Pavy called him to discuss the acts of donation. Although he admitted that attorney Pavy had handled a donation to another relative for him on a prior occasion, Tweedel testified that this time he intended to sign a will. He denied any desire to give the property to the Brasseauxs and denied reading the acts of donation. His health and reading ability were conceded to have been better in 1977 than at the time of trial.
Mrs. Elliot confirmed being a witness only once and thought she was witnessing a will. However, the four instruments signed in December of 1977 bear her signature as "Ida Elliot" and the two instruments dated January, 1979, have her signing as "Ida M. Elliot".
The most significant testimony concerning the intention of the Tweedels was that of Larry Elliot. In deposition, he testified that G.T. Tweedel told him they were either giving away or deeding away some property, and that they were doing it over a period of time to avoid inheritance taxes. This testimony by an entirely disinterested witness comports exactly with attorney Boudreaux's testimony and the acts of donation themselves.
Following the donations, the Tweedels continued to rent the one hundred twenty-six acre tract for farm purposes and even undertook to sell a ten acre section. That sale is not at issue in the present proceeding and, apparently, there was no title search. It was not until activity developed about a mineral lease that the Tweedels raised a question about the legal status of the land.[4] George Hall took a mineral lease from the Brasseauxs on behalf of LaBelle Petroleum and paid them a substantial bonus and then attempted to get a lease from the Tweedels. The Tweedels signed a lease for another oil operator, one Miley.
On March 20, 1981, the Tweedels filed a "Petition to Rescind Donation", which alleges: that the niece, Hester Tweedel Brasseaux, was instructed to obtain wills in her favor but that, unknown to them, she obtained acts of donation; that they were not allowed to read the acts; that they executed them in the belief that the instruments were wills; and that "the actions of defendants in this regard were fraudulent and were clearly done to benefit defendants to the prejudice of petitioners by deliberately misleading them through false representations." (Tr. 4) Thus, the petition of the *136 Tweedels asked that the acts of donation be voided.
By amending petition, the plaintiffs alleged that the acts of donation were invalid for certain defects of form, including the following:
"(1) Some or all are not authentic acts and/or do not meet the requisites of the Civil Code;
"(2) Some or all were incorrectly dated and/or were not dated on the date of execution;
"(3) Some or all were accepted prior to the actual donation;
"(4) The instruments were not read by or to the donors, witnesses, and/or notary;
"(5) Some or all were not signed by the parties, witnesses, and/or notary in the presence of each other; and
"(6) Some or all were not signed by the Notary on the same date the donors and/or witnesses signed." (Tr. 18)
After trial on the merits, the trial court held that the donations should be rescinded because the parties did not know what they were signing and did not have the document explained to them. According to the trial court, there was "overwhelming testimony" (Tr. 104) that the donors did not intend to make donations inter vivos and the donees did not intend to accept the donations. The trial court also found a "multitude of irregularities" (Tr. 102) in the instruments.
The court of appeal found that the transaction should be rescinded under Art. 1881 of the Civil Code having to do with error. The court of appeal wrote:
"Plaintiffs have convincingly shown that they signed the contract through error and there is ample evidence upon which the trial court could conclude that the defendants acted in error. It appears to us that the error was mutual insofar as the principal object of the contract was concerned. We base our opinion entirely on error and not on fraud or intent to deceive." 420 So.2d 1305 at 1307.

ISSUES
The issues are as follows:
(1) Are the instruments valid donations inter vivos?
a. Was there fraud, error, or misrepresentation which would invalidate the acts of donation?
b. Was there some defect of form or execution which would invalidate the acts?
(2) Were the donations validly accepted by the donees?

ISSUE NUMBER ONE

Were the Donations Invalid Because of Fraud, Error, Misrepresentation or Defects of Form?
FRAUD, ERROR, OR MISREPRESENTATION.
There is no evidence of fraud.
Plaintiffs argue that they intended to sign wills rather than donations. However, this claim is supported only by the testimony of Mr. and Mrs. Tweedel[5] and to a small extent by Mrs. Elliot. The Tweedels knew the documents were intended to be executed on three occasions in three different years. Elliot, an impartial witness, was told by the Tweedels that they were giving or deeding land over a period of time to avoid inheritance taxes. The Tweedels told the notary they understood what they were signing, but, most important, is the language of the instruments themselves. The acts are clearly titled "Donation Inter Vivos from George Thomas Tweedel & Lillian Fontenot Tweedel to Hester Tweedel Brasseaux, et als"; they state that the Tweedels own property in St. Landry and Acadia Parishes; that they are making donations to their relatives and that they reserve the right to use and usufruct of the property *137 during the term of their natural life.[6] The acts also say in paragraph six that the amount donated constitutes only a small portion of the Tweedels' estate and that they have reserved amply for their subsistence.[7] (Tr. 55)
"[S]ignatures to obligations are not mere ornaments." Boullt v. Sarpy, 30 La.Ann. 494 at 495. Additionally, the courts of our state have long held that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentatively whilst this is being done." Snell v. Union Sawmill Company, 159 La. 604 at 608, 105 So. 728 at 730 (1925). Bagneris v. Oddo, 2 Pelt. 278 (La.App.1919) held:
"The presumption is that parties are aware of the contents of writings to which they have affixed their signatures... The burden of proof is upon them to establish with reasonable certainty that they have been deceived." 2 Pelt. at 285.
Therefore, the Tweedels have not established that they erred by not understanding or intending the donations. The conclusions to the contrary by the trial court and the court of appeal are clearly wrong.
The trial court and the court of appeal also concluded that the Brasseauxs did not intend to accept the donations. It is true that the Brasseauxs did not understand the nuances of the transaction, but the acts contain clear acceptances. The Brasseauxs' testimony indicates that they knew the papers were donations and not wills with the Tweedels to continue enjoying use of the property until their deaths.
As to misrepresentation, there is no testimony that the Brasseauxs or anyone else told the Tweedels that the instruments were wills. On the contrary, the evidence, especially the unbiased testimony of attorney Boudreaux and Larry Elliot, is to the effect that the Tweedels were told what they signed, that is, a gift of the land with a reservation of a lifetime usufruct.[8]
DEFECTS OF FORM
Various charges against the acts of donation will be considered as enumerated in the amended petition:
"(1) Some or all are not authentic acts and/or do not meet the requisites of the Civil Code."
There is no question that the acts involved in this suit are donations inter vivos under the terms of LSA-C.C. art. 1536, as follows:
"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
George T. Tweedel and his wife, Lillian, signed the instruments before two witnesses and a notary public as required by the article. The documents constitute authentic acts.[9]
"(2) Some or all were incorrectly dated and/or were not dated on the date of execution."
*138 The fact that the Tweedels signed the 1978 set of instruments about three days before their stated date has no significance.[10] Signing the instruments three days early was at the request of the donors, according to all of the relevant testimony, and they cannot now complain of that fact.
"(3) Some or all were accepted prior to the actual donation."
This matter will be dealt with below.
"(4) The instruments were not read by or to the donors, witnesses and/or notary."
First, there is no legal requirement that the notary read the instruments; certainly there is no requirement that the witnesses read the instrument. Here the notary asked the donors if they understood what they were signing and they replied in the affirmative. The law of Louisiana is that one who signs an instrument without reading it has no complaint. As this court wrote long ago:
"... She now asserts that she is not bound by this instrument, because she did not read it, and signed it in ignorance of its purport. We have only to say that the law does not compel people to read or to inform themselves of the contents of instruments which they may choose to sign, but that, save in certain exceptional cases, it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights,..." Ray v. McLain, 106 La. 780 at 790, 31 So. 315 at 319 (1901).
The circumstances indicate that the reason the Tweedels did not read the instruments is that they were well familiar with the contents as a result of the telephone conversation between the lawyer in Opelousas and Mr. Tweedel. It is significant that Mrs. Tweedel, who testified that she keeps the family business files, had a copy of the instrument in her possession from December, 1977 until the lawsuit was tried.
"(5) Some or all were not signed by the parties, witnesses, and/or notary in the presence of each other."
There is no evidence to support this contention.
"(6) Some or all were not signed by the notary on the same date the donors and/or witnesses signed."
There is no evidence to support this contention.

ISSUE NUMBER TWO

Were the Donations Validly Accepted by the Donees?
To be binding, a donation must be accepted in precise terms by the donee according to LSA-C.C. art. 1540, as follows:
"A donation inter vivos shall be binding on the donor, and shall produce effect only from the day of its being accepted in precise terms.
"The acceptance may be made during the lifetime of the donor by a posterior and authentic act, but in that case the donation shall have the effect, with regard to the donor, only from the day of his being notified of the act establishing that acceptance."
Here, the Brasseauxs signed instruments in the presence of two witnesses and a notary public, which stated: "... the Donees accept the donations as made to them with love and gratitude...." Virtually identical language was held to constitute a valid acceptance under LSA-C.C. art. 1540 in Rutherford v. Rutherford, 346 So.2d 669 (La., 1977).
The only real acceptance question relates to the December, 1977, donation which was signed on December 29 by the Brasseauxs but dated the next day when the Tweedels affixed their signatures. The instruments were then recorded in two parishes, giving notice to the donors and to the world that the donations had been made and accepted. See Rutherford, supra.
The donees' signatures of acceptance were on the acts of donation and manifest to the Tweedels, who signed on the same *139 page. Thus, the minor discrepancy was known to all the parties at the time. The fact that the donees' signatures were affixed the preceding day is of little significance. There is no legal provision or jurisprudence which reprobates the idea of donees signing an acceptance immediately prior to a donation.
Acceptance in precise terms contained in the same act as a donation is valid, even though signed prior to the time the act is signed by the donors.[11]

CONCLUSION
Since the Tweedels validly donated the tract of land to the Brasseauxs, who validly accepted it, in acts which are not null because of any irregularity, the judgments of the trial court and court of appeal are reversed. Plaintiffs' suit is dismissed at their cost.
REVERSED AND RENDERED.
LEMMON, J., dissents for the reasons assigned by the Court of Appeal.
NOTES
[1] The Brasseaux name is sometimes spelled Brasseux in these proceedings.
[2] The trial court also ordered LaBelle Petroleum, intervenor, to pay $11,600, the amount of a mineral lease bonus, to the Tweedels, but absolved defendants from any duty to repay LaBelle. This feature of the judgment, for which there was no allegation or demand, is not now at issue.
[3] A somewhat ambiguous provision, not at issue here, gives the Brasseaux parents a successive usufruct of the property after the death of the Tweedels, leaving the Brasseaux children the naked ownership.
[4] Ordinarily the usufruct does not include the right to minerals. LSA-R.S. 31:188.
[5] The contrary testimony by the Tweedels, his marked by signs of infirmity of advanced age, and hers by hostility toward Hester Brasseaux, strongly suggests that the Tweedels made the donations in 1977-1979, but changed their minds as a result of the renewed mineral activity.
[6] While the words "inter vivos" and "usufruct" are legalistic, the words "donation" and "right of use" are clear, common, and easily understood words.
[7] A donor may not divest himself of all of his property. LSA-C.C. art. 1497.
[8] The reservation of the usufruct by the Tweedels was a valid provision in December, 1977, and thereafter under Civil Code Article 1533 which was amended by Act No. 210 of 1974 to read as follows:

"The donor is permitted to reserve for his own advantage, or to dispose of for the advantage of any other person, the enjoyment or usufruct of the immovable property given."
[9] LSA-C.C. art. 2234 provides the definition of an authentic act:

"The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses, aged at least fourteen years, or of three witnesses, if a party be blind. If a party does not know how to sign, the notary must cause him to affix his mark to the instrument. "All proces verbal of sales of succession property, signed by the sheriff or other person making the same, by the purchaser and two witnesses, are authentic acts."
[10] Possible questions which might be raised relative to tax matters are not at issue in these proceedings.
[11] Suppose the evidence reflected that the donors and donees executed the single act of donation and acceptance before the same witnesses and the same notary public but that the donees physically signed the document before the donors. Quaere: Would the acceptance be invalid? Of course not: LSA-C.C. art. 1554 specifically recognizes that the acceptance may be in the same act as the donation.