504 So.2d 660 (1987)
PARLAY ENTERPRISES, INC.
v.
R-B-CO, INC. OF BOSSIER, Richard M. Heisler, Jr. and Diana Pratt Heisler.
No. 18397-CA.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1987.
Rehearings Denied April 15, 1987.
*661 Frederic L. Miller, Miller, Dawson & Askew, Shreveport, for plaintiff.
Henri Loridans, Patricia N. Miramon, Loridans & Loridans, Bossier City, for defendants Heisler.
Before WILLIAM V. REDMANN, JAMES C. GULOTTA, ROBERT J. KLEES, WILLIAM H. BYRNES III and PHILIP C. CIACCIO[*], JJ. pro tem.
WILLIAM V. REDMANN, Judge pro tem.
Plaintiff appeals from a judgment on jury verdict rejecting its suit against Richard and Diana Heisler on a promissory note. The basic question is whether parol evidence justified the jury's finding that, despite their unqualified signatures on the note as makers, the Heislers did not "execute" the note "in their individual capacities." The parol evidence exclusionary rule prevents that finding. The secondary question is, therefore, whether the parol evidence shows that the Heislers' signing of the note was the result of either mutual mistake within La.C.C. 1826 (1870) or the payee's fraud within art. 1847. Reviewing the facts, La. Const. art. 5 § 10(B), and giving credibility to the Heislers as the jury obviously did, we hold that it was. We therefore affirm.

I
The note is payable to plaintiff and bears signatures in the following form, all typewritten except the names above the lines, which were handwritten by the Heislers:
 "R-B-CO, INC. OF BOSSIER
 "BY: Richard M. Heisler, Jr.
 "Richard M. Heisler, Jr.
 Richard M. Heisler, Jr.
 "Diana Pratt Heisler
 Diana Pratt Heisler"
The jury's finding that the Heislers did not execute that note "in their individual capacities" appears beyond the jury's province, which is to determine fact. That note unambiguously represents the individual *662 obligation of the Heislers as makers. Although we see no ground for considering them other than as makers, if somehow they are not makers, they are at least indorsers, La.R.S. 10:3-402 (equally liable, § 3-414). As a matter of law, therefore, although Mr. Heisler's first signature, following the word "by," expressly purports to be for the corporate maker (and not a signature in his individual capacity), his second signature and that of Mrs. Heisler are, simply, the signatures of additional, individual co-makers of the note. "[S]ignatures to an instrument are not mere ornaments." Boullt v. Sarpy, 30 La.Ann. 494, 495 (1878); Tweedel v. Brasseaux, 433 So.2d 133 (La.1983).

II
If the jury's finding were construed to mean that the Heislers did not intend to execute the note in their individual capacity (as they testified), the finding would be irrelevant, because of the parol evidence exclusionary rule, La.C.C. 2276 (1870): "Neither shall parol evidence be admitted against or beyond what is contained in the [written] acts, nor on what may have been said before, or at the time or making them, or since." Wigmore, Evidence (Chadbourn rev.), § 2400, explains that the parol evidence rule
"is in no sense a rule of evidence, but a rule of substantive law.... What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all.... But this prohibition of proving it is merely the dramatic aspect of the process of applying the rule of substantive law."
Parol evidence to show merely that the parties earlier agreed that the Heislers were not to be personally liable is, by itself, therefore incompetent to defeat their clear personal liability under the later contract, the note. See Moosy v. Huckaby Hosp., Inc., 283 So.2d 699 (La.1973); Ortolano v. Snowizard Mfg., Inc., 476 So.2d 359 (La. App. 4 Cir.1985), cert. denied 479 So.2d 922 (La.1985).
In the absence of other defense, then, the Heislers would be personally liable on the note (as on this ground the original panel preliminarily concluded, requiring this five-judge panel, La. Const. art. 5 § 8[B]).

III
Other defense was presented. An amended answer pleaded mutual mistake, and evidence admitted without objection expanded the pleadings, La.C.C.P. 1154, to include fraud.
The Heislers testified, and the jury doubtless believed, that they were unwilling to commit themselves personally beyond the $45,000 that they personally borrowed for the down payment for these businesses, and were therefore unwilling to undertake personal liability for the balance of the price.
Although Mr. Heisler executed the buy-sell agreement individually as the purchaser, with no mention that the actual purchaser was to be a corporation (as yet unformed), so did one Michael H. Jarrell execute the buy-sell agreement individually as the vendor, with no mention that the actual vendor was to be a corporation.
The original drafts of the notarial act of sale of the business and of the note were presented to the Heislers (and by them presented to their attorney) a few days prior to the closing. Those drafts were blank at the locations where, in the final act and note, the personal liability of the Heislers was provided. The closing lawyer-notary's explanation for their absence from the draftsespecially of the note did not really explain their absence.
Furthermore, the testimony of the Heislers supports the conclusion that Jarrell, plaintiff's president, knowing that the Heislers' lawyer was unavailable because away on a trip, rushed the Heislers into signing the note and completing the business purchase (some 200 pages of documents) on a Monday two days before its scheduled date and one day before their lawyer was to return, pushing the Heislers not to wait *663 even that one day. Plaintiff did so by misrepresenting that Mr. Heisler had to go to Waco that Tuesday to attend a franchisees' training school starting Wednesday or else lose four months until the next school, and that he had to be a franchise owner before he could attend the school. In fact, according to Mr. Heisler's testimony, the training school did not start and was not scheduled to start until Friday, and one of its other students did not already own a franchise before attending the school.
Without their own lawyer present, and because of the instructions of the lawyer handling the closing, the Heislers signed the note and one or both signed a notarial "act of sale" and an act of "sale, vendor's lien and chattel mortgage" of the assets, both by plaintiff to R-B-CO, and several other documents. One of these is a personal guaranty by the Heislers of one sublease to R-B, and others, curiously, are executed not by Parlay in favor of R-B but by Parlay's president and his wife individually in favor of the Heislers. None of these was agreed upon by the buy-sell agreement, and there is no other record explanation for them. The inference is justified that the closing lawyer had to arrange many more documents than those for which the original buy-sell agreement provided.
Perhaps the best explanation of the jury's verdict, and the one which we adopt, is that the Heislers' personal liability in the final drafts was placed there by the mistake of the closing lawyer and was not intended by Jarrell for Parlay nor by the Heislers either for R-B or for themselves; that Jarrell always knew and agreed for plaintiff that the Heislers were not to be personally liable. We prefer to so construe the jury's finding for the Heislers, rather than as a finding that the Heislers' individual consent was obtained by fraud within the meaning of C.C. 1847 (1870): "error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience [correct translation: a detriment] to the other."
In respect to that possibility, we note that if the closing had awaited their lawyer's return to town, he would not have let them sign the $120,000 note as they did upon the instructions of the lawyer handling the closing. (That lawyer must be counted as plaintiff's lawyer, just as it was plaintiff's broker who specified in the buysell offer that closing would take place before that lawyer.) And the Heislers' lawyer had the right to insist on no personal liability for them, because, as noted earlier, the buy-sell agreement was never signed by Mrs. Heisler nor even by plaintiff, but only by Mr. Heisler and Mr. Jarrell. Mrs. Heisler had no personal contractual liability to either plaintiff or Mr. Jarrell; and Mr. Heisler owed nothing to plaintiff. Nor did Mr. Heisler owe anything to Mr. Jarrellbecause contracts are not enforceable unless both sides are bound and Mr. Heisler could not have obtained delivery of the plaintiff corporation's assets by specific performance by Mr. Jarrell of his personal promise (which did not purport to be a porte-forte, C.C. 1889 (1870)). Thus the Heislers were never personally liable to plaintiff before the day of closing; and their lawyer, had not closing been advanced by plaintiff's misrepresentation, would not have let them sign the note individually.
Thus plaintiff's false representation of a need for the sale of the franchises to be executed when the Heislers' lawyer was away, together with the absence of the personal liability provisions from the preclosing drafts of the act and note, could be deemed an artifice by which plaintiff obtained the Heislers' consent to sign, to their detriment, the act of sale promising their personal liability and to sign the note individually making them personally liable. The circumstances could be deemed to meet the provisions of C.C. 1847 (1870) avoiding consent for fraud, and the Heislers would therefore not be personally liable on the note in any case. We prefer, as *664 we have said, to treat the case'as one of mutual mistake.
Affirmed.
NOTES
[*] Defendant Diana Heisler being clerk of the court of appeal, second circuit, its regular judges recused themselves and the supreme court appointed the judges of the court of appeal, fourth circuit, judges pro tempore.