526 So.2d 1231 (1988)
BARRAS & BREAUX, an Architectural Corporation, Robert Barras and Don Breaux, Plaintiffs-Appellees,
v.
Junius J. CHAMPEAUX, Defendant-Appellant.
No. 87-223.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
*1232 Stockwell, Sievert, Viccellio, Clements & Shaddock, William B. Monk, Lake Charles, for defendant-appellant.
Juneau, Hill, Judice, Hill & Adley, P.L.C., Kraig Strenge, Lafayette, for plaintiffs-appellees.
Before GUIDRY, DOUCET and KNOLL, JJ.
DOUCET, Judge.
Plaintiffs Barras and Breaux, an architectural corporation, Robert Barras and Don Breaux, filed suit against defendant, Junius J. Champeaux, seeking specific performance *1233 of a stock transfer agreement executed by defendant, injunctive relief and damages.
Defendant answered plaintiffs' petition and filed a reconventional demand seeking to have the stock transfer agreement rescinded. Defendant subsequently filed a supplemental and amended reconventional demand seeking rescission of a Dation en Paiement executed by plaintiffs and defendant involving the transfer of defendant's undivided interest in a piece of immovable property in exchange for the forgiveness of certain debts owed to plaintiffs. Defendant's wife, Rosalie LeVeque Champeaux, thereafter intervened in the suit and adopted her husband's allegations as amended and supplemented with regard to the reconventional demands.
A trial on the merits was held and judgment was entered in favor of plaintiffs and against defendant on all claims. Specifically, judgment was entered in favor of plaintiffs in the amount of $78,469.51, with legal interest thereon from the date of judicial demand and all costs of the proceedings. Moreover, judgment was entered in favor of Barras and Breaux individually in the sum of $5,000 with legal interest thereon from the date of judicial demand. Additionally, an injunction was granted enjoining defendants from receiving any sums due on the accounts of Barras, Breaux and Champeaux transferred to defendant and granted plaintiffs the right to receive all such sums and apply them directly to the indebtedness assumed by defendant. It is from this judgment that defendant now appeals.
The facts show that Champeaux was a member of the Barras, Breaux and Champeaux architectural firm, which was incorporated with offices located in both Lafayette and Lake Charles. The office in Lafayette was headed by Robert Barras and Don Breaux. The office in Lake Charles was headed by defendant. While there was only one corporation, the Lafayette and Lake Charles offices operated independently of each other.
Champeaux initiated a meeting with Barras in late April of 1984 and the two met in Jennings, Louisiana on that same day. In Jennings, Champeaux informed Barras that he was experiencing serious financial difficulties and that he thought that it would be best that he withdraw from the firm.
It was informally agreed upon at the meeting in Jennings that the corporation would be split and that Champeaux would be assigned all of the assets and liabilities of the corporation associated with the office located in Lake Charles. Moreover, it was informally agreed upon at this time that Barras and Breaux would be assigned all of the assets and liabilities associated with the Lafayette office. Consequently, the two offices split the assets and liabilities as agreed and began functioning independently of each other. This agreement was reduced to writing and evidenced in the previously mentioned stock transfer agreement dated October 11, 1984.
In addition to splitting up the corporation, it was also agreed that the newly formed corporation, Barras and Breaux, would receive defendant's undivided one-third interest in the aforementioned parcel of land which we will refer to as the "Ridgeway Property," in satisfaction of the debts defendant owed to the Barras, Breaux and Champeaux Corporation which were estimated to total approximately $89,000.
Plaintiffs urge that defendant's debts consisted primarily of the negative capital balance owed to the Barras, Breaux and Champeaux Corporation and that the forgiveness of this negative capital balance was the main consideration for the property transferred to Barras and Breaux. However, other consideration for the property was the fact that the principals of Barras, Breaux and Champeaux agreed to quitclaim any right or title they had in the Petro Point 5000 venture, a project which was initiated by Champeaux and which was located in the Lake Charles area. Plaintiffs contend that they had an interest in the Petro Point 5000 venture due to an informal agreement by the principals of Barras, Breaux and Champeaux to share proportionally in whatever interests they may acquire in properties due to contacts *1234 or opportunities acquired as a result of the corporation. Additionally, plaintiffs contend that other consideration for the Ridgeway Property is the waiver by the principals of Barras, Breaux and Champeaux of any interest on the negative capital balance owed by Champeaux to the corporation.
Defendant, on the other hand, contends that the Barras, Breaux and Champeaux Corporation never had any interest in the Petro Point 5000 venture. Further, defendant adds that he does not owe the Barras, Breaux and Champeaux Corporation interest on the negative capital balance because the other principals of the corporation were not required to pay any interest on their amounts owed to the corporation.
As agreed, Champeaux conveyed his interest in the Ridgeway Property to the newly formed Barras and Breaux Corporation and Barras and Breaux quitclaimed any rights or title they may have had in the Petro Point 5000 Venture. The Dation en Paiement recites as consideration for the transfer of the Ridgeway Property, the "forgiveness, cancellation, and hereby deeming satisfied and discharged of that certain indebtedness owed by Junius J. Champeaux, to Barras, Breaux, and Champeaux, an Architectural Corporation, the current balance of which is Eighty-Nine Thousand and no/100 ($89,000.00) Dollars."
Champeaux failed to pay the indebtedness he informally agreed to assume. Because the informal agreement was not binding on third parties, the newly formed Barras and Breaux were thus forced to make payments on this indebtedness.
On appeal, defendant specifies four assignments of error, the first being that "The District Court erroneously, failed to even consider that the Ridgeway Property transaction was invalid, even without proof of lesion." We disagree.
In support of his contention, defendant urges that the transfer of the Ridgeway Property in exchange for the forgiveness of his indebtedness to the corporation is invalid due to the fact that the parties to that transaction were required to correctly specify the actual amount of Champeaux's indebtedness to the corporation in order for that agreement to have been valid. The document stated the indebtedness to be $89,000, when indeed, it was established at trial that defendant's negative capital balance owed to the corporation was only $83,355.50. Defendant adds that because the amount of Champeaux's indebtedness was not correctly specified in the Dation en Paiement, the transfer is invalid. Defendant cites three cases which stand for the proposition that the amount of a debt must be fixed in order to have a valid Dation en Paiement. However, the foregoing proposition is simply one facet of the cases. There are other propositions of law in the cases which modify this general statement. Specifically, in Pulford v. Dimmick, 107 La. 403, 31 So. 879 (1902), suit was filed by a forced heir against the transferee of a certain parcel of immovable property transferred by the plaintiff's deceased grandfather. The plaintiff urged that the transfer of the property prior to his grandfather's death was not valid since the document containing the transfer of the property did not contain a fixed price. The act of transfer did not contain a fixed price of the property purportedly sold, but did state that the property was being transferred in consideration of the services rendered the deceased grandfather without stating the amount that had been agreed upon as to the value of the services.
The transferee attempted to establish the value of the services agreed upon by the parties by parol evidence, however, the transferee contradicted himself and the stated consideration in the document itself.
In addressing the requisites of a valid contract of sale, the Louisiana Supreme Court stated:
"In the contract of sale it is essential that the price be certainfixed and determined between the parties. While the validity of a sale does not depend on a price being fixed with certainty in the act, it does depend on a certain price being agreed upon by the parties or left to the arbitration of a third person who fixes it. And a transfer in writing of real estate, if attacked, must be held null as a sale if it is not shown that it *1235 is made for a price that was fixed and agreed upon. So, to, a fixed price is of the essense of the contract in Dation en Paiement." Pulford at 880. (emphasis added)
In reaching its decision, the Supreme Court added:
"[w]e are forced to the conclusion, in view of the fact that his is the only testimony found in the record touching the matter of price, that no amount was fixed and determined on by the parties as the consideration of the sale. The two statements are so conflicting and contradictory that effect can be given to neither.... The pre-existing debt for services rendered, due by Addison Dimmick [the deceased grandfather] to his son [defendant/transferee], would, however, have supported this transfer or sale, had the parties fixed the amount thus due, and agreed upon the same as the price of the sale." Pulford at 881.
Thus, in Pulford, supra, the court held that the act of transfer, whether it is considered as a sale or a Dation en Paiement, need not recite the exact amount of consideration in order to be valid. Instead, the court stated that had it been proven through testimony that there had been an actual amount agreed upon between the parties as consideration for the transfer, it would have been upheld as a valid transfer.
In the instant situation, the document evidencing the transfer of the Ridgeway Property stated the consideration to be $89,000. The trial court found as a matter of fact that the negative capital balance due by Champeaux to the corporation was actually $83,350.50. In light of Pulford, supra, we find that this alone does not invalidate the Dation en Paiement. Instead, the relevant inquiry is whether a definable amount of consideration was agreed upon between the parties.
The parties agreed that defendant would transfer his undivided one-third interest in the Ridgeway Property, and in exchange, the corporation would release defendant from any obligation owed on the negative capital balance. Moreover, it was agreed that the corporation and its principals would quitclaim any interest they may have had in the Petro Point 5000 venture. While we are aware that defendant denies that plaintiffs ever had any interest in the Petro Point 5000 venture, the trial court judge found that plaintiffs did indeed have an interest in the venture. In view of the fact that the architectural corporation made interest payments on indebtedness arising out of the venture and in view of Robert Barras' testimony regarding the matter, we cannot say that the trial court judge was in error in this finding of fact. As such, we find that the parties did agree upon a definable amount of consideration. Consequently, we find as did the trial court, that the transfer contained all of the requisites for a valid Dation en Paiement. Defendant-Appellant's first assignment of error thus is without merit.
In defendant's second assignment of error, he asserts that, "In summarily rejecting Champeaux's lesion claim, the District Court erroneously averaged the opinions of the appraisers." Defendant supports this contention with one sentence taken from the trial court judge's written reasons for judgment. The paragraph from which that sentence was quoted reads as follows:
"Champeaux also reconvened alleging that the Dation en Paiement of the Lafayette property was lesionary. Both sides presented well qualified real estate appraisers, none of whom agreed with another. Taken as a whole, their testimony convinces the court that the transfer of interest was not tainted with lesion." (emphasis added)
While we are aware that it is improper for a judge to simply average the opinions of real estate appraisers in order to come up with a figure, we fail to see any evidence that this was done in the instant situation. Instead, the trial judge specifically states that he considered the testimony of all of the appraisers when determining whether the Ridgeway transaction was lesionary. Thus, we find no merit in this contention.
Defendant next asserts that the opinions of his experts were much more reasonable and supported by more sound analyses *1236 than the gross under-valuations that were presented by plaintiffs' experts. Defendant, in turn, is requesting this court to "carefully select the appraisers' opinions which are most reasonable" and to overturn the ruling of the trial court upholding the Ridgeway Property transaction.
In the instant situation, all four of the real estate appraisers were qualified in their field of expertise. While they all used the market value approach or the use of comparables in order to determine the market value of the Ridgeway Property, there were various differences of opinions among the experts regarding the value of the property. Defendant attempts to pick apart the opinions of plaintiffs' appraisers and to interject certain values deemed appropriate by him in order to arrive at a figure which would be deemed lesionary. However, as correctly stated by plaintiffs in their appellate brief: "The issue is not whether a surgical disection [sic] of the opinions of Barras & Breaux's appraisers, coupled with the interjection of data contrary to that relied on by Barras & Breaux's appraisers, will achieve a mathematically large enough figure to support Champeaux's lesion claim. The issue before this court is whether the trial court's assessment of the credibility of the experts' testimony and its evaluation of the value of the Ridgeway property was manifestly erroneous."
The trial judge is not bound to accept or reject one expert's testimony in its entirety to the preference or rejection of another's. Bisco v. Middleton, 383 So.2d 1047 (La.App. 1st Cir.1980); Dixie Electric Membership Corporation v. Guitreau, 302 So.2d 324 (La.App. 1st Cir.1974).
After a careful review of the record, we hold that it was entirely within the trial judge's discretion to find that the Ridgeway Property transaction was not tainted with lesion. There is ample evidence in the record to support such a finding (i.e., the appraisals of Core and Babineaux of approximately $134,000 and $148,000 respectively). We find this evidence to be credible evidence. As such, we cannot say that the trial court's finding with respect to this issue is manifestly erroneous. Thus, this contention is without merit.
Defendant next asserts that lesion was even established by the testimony of the appraisers for plaintiffs. Defendant attempts to support this contention by giving a hypothetical example of how the assets of the corporation would be split upon liquidation. However, the splitting of assets upon liquidation is not the issue. Instead, the issue is whether the transaction whereby defendant transferred his one-third interest in the Ridgeway Property to plaintiffs in exchange for the forgiveness of his negative capital balance and plaintiffs' relinquishment to any right or interest in the Petro Point 5000 venture was lesionary. Having found that it was not, this contention is also without merit.
We next address defendant's contention that, "The trial court erred in enforcing Champeaux's purported individual, unconditional assumption of more than $100,000 in corporate debts, despite his mistaken understanding of ambiguous terms in the agreement drafted by counsel for Barras and Breaux". Defendant supports this contention by maintaining that he was under the impression that he had agreed to accept the assets and liabilities of the office located in Lake Charles in exchange for the transfer of his stock in the corporation, but that he was under absolutely no obligation to pay the liabilities until he was financially able to do so, if ever. Defendant adds that the document is ambiguous and that he did not have any legal advice as to the contents of the document.
We find the stock transfer agreement to be clear and unambiguous. It clearly sets forth the terms of the agreement. Because defendant failed to closely consider the document or to receive legal advice is of no moment. A party may not avoid the provisions of a written contract he signed but failed to read or have explained to him. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Brabham v. Harper, 485 So.2d 231 (La.App. 3rd Cir.1986).
In Tweedel, the Louisiana Supreme Court stated:

*1237 "[S]ignatures to obligations are not mere ornaments." Boullt v. Sarpy, 30 La. Ann. 494 at 495. Additionally, the courts of our state have long held that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done. "Snell v. Union Sawmill Company, 159 La. 604 at 608, 105 So. 728 at 730 (1925). Bagneris v. Oddo, 2 Pelt. 278 (La.App.1919) held:
"The presumption is that parties are aware of the contents of writings to which they have affixed their signatures.... The burden of proof is upon them to establish with reasonable certainty that they have been deceived." 2 Pelt. at 285. Tweedel, 433 So.2d at 137.
Defendant further urges that the transfer is invalid due to unilateral error. He cites Hoffman v. Craftworld International, Inc., 463 So.2d 89 (La.App. 3rd Cir. 1985) as authority for this proposition. Hoffman, supra, however, states that the error must have been the principal cause for making the contract. Such was not the case in the matter at hand. Defendant approached plaintiffs regarding the splitting up of the corporation. We find that this was the principal if not sole cause of the documents executed by defendant. Thus, this contention is without merit. With respect to defendant's contention that the stock transfer is invalid for lack of consideration, we find this also to be without merit. As correctly recognized by the trial judge in his written reasons for judgment, the stock had a negligible book value.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at defendant/appellant's cost.
AFFIRMED.