# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**08-1497**


**DARRYL W. RICHARD**

**VERSUS**

**LEANNA MARIE GLAUDE**

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 06-C-5767-C
HONORABLE ALONZO HARRIS, PRESIDING
**********

**SYLVIA R. COOKS**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy and J. David Painter, Judges.


**REVERSED.**

Bruce A. Gaudin
100 W. Bellevue Street
Opelousas, LA 70570
(337) 948-3818
COUNSEL FOR PLAINTIFF/APPELLEE:
    Darryl W. Richard

Edward J. Milligan
P.O. Box 90282
Lafayette, LA  70509
(337) 237-6491
COUNSEL FOR DEFENDANT-APPELLANT:
    Leanna Glaude

**COOKS, Judge.**

This matter arose when plaintiff-appellee, Darryl Richard, filed a Petition to Nullify Donation to defendant-appellant, Leanna Glaude. Mr. Richard was the owner of a home located on property in St. Landry Parish. At the time of the purchase of the land, Mr. Richard was married to Bobbie O'Connor. When the two divorced, Ms. O'Connor transferred her interest to Mr. Richard for $1,500.00, and Mr. Richard was also required to refinance the property and have Ms. O'Connor cleared from the mortgage.

In order to secure refinancing, Mr. Richard was able to get Ms. Glaude, who at the time was his fiancee, to co-sign a mortgage note as an accommodation maker and surety to make the potential loan more credit worthy and attractive to the creditor. An Act of Donation was entered into, wherein Mr. Richard agreed to transfer to Ms. Glaude an undivided one-half (½) right, title and ownership in and to the house and real estate. With Ms. Glaude co-signing the mortgage note, Mr. Richard was able to secure the refinancing. At the closing, on June 24, 2005, Mr. Richard and Ms. Glaude were presented with a loan package that included the Act of Donation. Both parties signed all the documents.

In 2006, Mr. Richard sought to refinance the mortgage on his property. At that time, it was told to him that he could not refinance the property without Ms. Glaude's signature since fifty percent ownership of the property had been transferred to her by the Act of Donation signed in 2005. Mr. Richard, maintaining he had erroneously donated the fifty percent ownership to Ms. Glaude, approached her to execute a document to clear the title and transfer her interest back to him. She refused to sign that document.

Mr. Richard then filed a Petition to Nullify Donation. He contended the

donation was made in error, and that he had no intention of donating an interest to Ms. Glaude. In contrast, Ms. Glaude maintained she and Mr. Richard were engaged at the time and that he wanted to save his home and they agreed he would donate one-half of the property to her in return for her co-signing the note.

At trial, Rene Trahan, who was the notary that handled the loan closing, testified the closing lasted less than one hour, and the mortgage documents contained twenty-three pages. She stated while she went over the donation and other documents with the parties, she did not read them word for word. Ms. Trahan did not recall in specifics this particular closing, but just testified as to her standard procedure she uses in closings.

Mr. Richard testified it was not his intent to donate half of his property to Ms. Glaude. He stated the donation was not read to him, and he did not realize until months later when he attempted to refinance that he had signed such a document.

The trial court ruled in favor of Mr. Richard, specifically finding he "did not intend to donate one-half of his home to the Defendant, Ms. Glaude." The trial court concluded the evidence indicated the Act of Donation was not clearly explained to him, and Mr. Richard did not have the opportunity to discuss the Act of Donation with independent counsel prior to closing. Finding Mr. Richard's "consent was vitiated by error," the trial court granted the Petition to Nullify Donation.

Ms. Glaude has timely appealed that judgment, and asserts (1) the evidence adduced at trial did not prove the Act of Donation was an absolute nullity; and (2) the trial court erred in finding Mr. Richard's consent was vitiated by error.

**ANALYSIS**

Initially, we agree with Ms. Glaude that the Act of Donation was in authentic form and was not an absolute nullity. The testimony adduced at trial from Rene

Trahan indicated the Act of Donation was executed in proper form for an authentic act. It was signed by both parties, in the presence of a Notary Public and two witnesses, who all signed the document. *See* La.Civ.Code art. 1833. Thus, the Act of Donation was not an absolute nullity.

We now turn our attention to the trial court's conclusion that Mr. Richard's consent was vitiated by error. The testimony adduced at trial reveals no error that would vitiate Mr. Richard's consent with reference to the Act of Donation.

Rene Trahan, the notary at the closing, testified she explained in general terms all the documents that were before them, including the Act of Donation. Although she acknowledged she did not read the Act of Donation word for word, Ms. Trahan testified she placed it in front of both parties and explained the document to them. Ms. Trahan stated she explained to Mr. Richard he was donating a half interest to Ms. Glaude, which Mr. Richard stated he understood. She did not specifically recall if Mr. Richard had any questions, but she testified he must not have had any problems with the donation since both parties signed it and they proceeded with the closing.

Kevin Vidrine, who was the mortgage broker, testified he did not specifically recall this particular closing, but was certain he would have discussed the donation with Mr. Richard. He stated he would not have had the Act of Donation prepared by the title company if Mr. Richard had not agreed to its terms.

Mr. Richard testified he was aware at the time of the closing that he and Ms. Glaude were each responsible for half of the note. Mr. Richard stated he was paying attention at the closing and understood what was going on, but continued to maintain he had no intent to transfer half his interest in the property to Ms. Glaude. Mr. Richard testified as follows about his understanding of the closing:

Q.   Were you paying attention, Mr. Richard?

A.    Yes, I was.

Q.    You're sure?

A.    Yes, I was.  I understood quite well what was going on.

Q.    You understood quite well what was going on?

A.    But I didn't understand about my – I didn't understand about me signing those papers was gonna be one half of my house going to Ms. Glaude cause if I would have, I would have never signed it, trust me.

Q.    Well, why didn't you say something?

A.    To be honest with you, sir, I really don't know.  I could kick my onself [sic] for it.

Q.    Uh-huh.  But you had that opportunity?

A.    Again, it was going through trust and faith, sir.

Q.   But Ms. Trahan says, she testified, you know, you're giving up half of your property.

A.    Not to my understanding, sir.

Q.   Oh, not to your understanding.  Do you generally sign papers that you don't understand.

A.    No, sir, I don't.

. . . .

Q.    You had an opportunity and she offered you that opportunity to question that donation, did she not?

A.    I assume so.

In her testimony, Ms. Glaude stated that Ms. Trahan explained to Mr. Richard that he was donating a half interest to her.

Mr. Richard argues he made an error that vitiates his consent under La.Civ.Code art. 1948, which provides that "[c]onsent may be vitiated by error, fraud or duress."  However, La.Civ.Code art. 1949 provides "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred

-4-

and that cause was not known or should have been known to the other party."

The Louisiana Supreme Court stated that "[e]rror vitiates consent only when a party's consent has been determined by it and when the other party knew or should have known that the matter affected by the error was the cause of the obligation for the party in error." *In re J.M.P.*, 528 So.2d 1002, 1010 (La.1988). Thus, any unilateral error on the part of Mr. Richard as to his understanding of the effect of the Act of Donation is not sufficient to vitiate his consent.

Since the Act of Donation was executed in authentic form and is not an absolute nullity, Ms. Glaude points to the long standing rule of law that a person is presumed to have knowledge of the contents of a document he is signing. *See Tweedel v. Brasseaux*, 433 So.2d 133 (La.1983); *Tate v. Hanover Ins. Co.*, 526 So.2d 1302 (La.App. 3 Cir.., *writ denied*, 530 So.2d 569 (La.1988). In *Aguillard v. Auction Management Corp.*, 04-2804, p. 16 (La. 6/29/05), 908 So.2d 1, 17, the Louisiana Supreme Court explained that a party is deemed to know the contents of a signed, written instrument and cannot avoid his or her obligations by claiming he or she did not read it or was not aware of its contents:

> The Civil Code recognizes the right of individuals to freely contract. La.Civ.Code art.1971; *see also*, Art. I, § 23 of the Louisiana Constitution of 1974. " 'Freedom of contract' signifies that parties to an agreement have the right and power to construct their own bargains." *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc.*, 96-1716 (La.7/1/97), 696 So.2d 1373, 1380 (*citing* Blake D. Morant, *Contracts Limiting Liability: A Paradox with Tacit Solutions*, 69 Tul.L.Rev. 715 (1995)).

> It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him. *See, e.g.*, *Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La.1983) (stating: "The presumption is that parties are aware of the contents of writings to which they have affixed their signatures ... The burden of proof is upon them to establish with reasonable certainty that they have been deceived." "If a party can read, it behooves him to examine an instrument before signing it; and

if he cannot read, it behooves him to have the instrument read to him and listen attentatively whilst this is being done."). The plaintiff in this case signed the contract "acknowledg[ing] that he ... read and [understood the] AUCTION TERMS & CONDITIONS and agree[d] to be bound thereby."

It is undisputed in this case that Mr. Richard signed the Act of Donation, which by its clear terms transferred one-half (½) right, title and ownership in and to the house and real estate. The jurisprudence establishes that if a party is not aware of the contents of the instrument he or she signed, he or she must establish "with reasonable certainty that [he or she has] been deceived." *Tweedel v. Brasseaux*, 433 So.2d at 137. There is nothing in the record to establish any deceit on the part of Ms. Glaude or any other party to the loan closing. Having signed the Act of Donation, which clearly and unambiguously provided that Mr. Richard was transferring to Ms. Glaude a one-half interest in the property, Mr. Richard cannot now seek to avoid its obligations by contending that he did not read it or understand it. Therefore, the trial court erred in granting the Petition to Nullify Donation.

### DECREE

For the foregoing reasons, the judgment of the trial court granting Mr. Richard's Petition to Nullify Donation is reversed and set aside. All costs of this appeal are assessed against Plaintiff-Appellee, Darryl Richard.

**REVERSED.**