WEIMER, J., dissenting.
I concur in the dissent of Justice Clark in this matter and write separately only to offer additional comments.
*881 In my opinion, the fundamental flaw in the majority opinion is that it eschews civil law principles that recognize the supremacy of legislation[1] and embraces a jurisprudential pronouncement ( Brown v. Drillers, Inc. , 93-1019 (La. 1/14/94), 630 So.2d 741 ) when a specific codal provision governs the resolution of this case. Specifically, La. C.C. art. 2046 provides:"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."
The applicability of this codal provision is implicitly acknowledged with the declaration that the "Final Release and Settlement of Claim" at issue herein "unambiguously released 'all other persons, firms or corporations who are or might be liable from any and all actions, causes of action, claims, demands, damages, costs, loss of services, loss of consortium, expenses, and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage, resulting or to result from an accident that occurred on or about 01/14/2015.' " Maggio v. Parker , 17-1112, slip op. at 6 (La. 6/ /18) (emphasis added). With this acknowledgment, the inquiry should have ended.
Nevertheless, under the guise of following the jurisprudential "exception" to the clear directive of La. C.C. art. 2046 recognized in Brown , an examination is made of the factual evidence to determine "whether unequivocal language in the instrument was intended to be unequivocal ." Maggio , supra (quoting Brown , 630 So.2d at 749 ), emphasis added. This language from Brown represents a form of judicial "double speak," which evades and erodes the provisions of La. C.C. art. 2046. (After all, "unequivocal" or "unambiguous" language[2] is certainly, by any definition of the term, "clear and explicit" language, which should trigger application of La. C.C. art. 2046, and its directive that when the words of a contract are clear and explicit, "no further interpretation may be made in search of the parties' intent.") The resort, in this case, to jurisprudence over directly applicable codal authority is at odds with Louisiana's civil law heritage.
Moreover, that reliance on jurisprudence is unnecessary, as Brown is clearly distinguishable from the instant case. In Brown , the plaintiff, Buell Brown, filed suit against numerous defendants, seeking damages for injuries resulting from his fall from a drilling rig. Mr. Brown's wife later asserted a loss of consortium claim. Subsequently, the parties entered into a settlement, whereby the Browns released their claims against the defendants and dismissed their lawsuit. Five years later, Mr. Brown died as a result, at least in part, of *882 the injuries he sustained in his fall, and his widow filed a wrongful death action. The defendants moved for summary judgment, arguing that the wrongful death action was barred under the terms of the release. Mrs. Brown opposed the motion, arguing that she never intended to dismiss her wrongful death claims, as she did not expect Mr. Brown to die from his injuries.
Brown clearly arose under unique facts, as the wrongful death claim in that case did not accrue until long after the settlement was confected. Unlike Brown , where the issue before the court was whether a release confected while an injured party was still alive extended to the future, uncontemplated wrongful death action of his widow and minor child, this case involves a plaintiff who was obviously aware of his claims against the instant defendants, as he filed suit on June 19, 2015, alleging that James Parker, The Sandwich Kings LLC, Republic-Vanguard Insurance Company, and Metropolitan Property Casualty Insurance Company were liable for the damages he suffered as a result of the accident, and entered in the settlement with Farm Bureau and Brenda Parker less than one month later.
Nevertheless, under the aegis of following Brown , an attempt is made to identify "[c]ircumstances unique to this case surrounding the signing of the document [that] give rise to an issue of fact regarding intent." Maggio , slip op. at 7. While, admittedly, the circumstances identified are unique to this case, many of the cited circumstances are ultimately irrelevant. For example, it is of no moment that the defendants were not specifically named in the release document, as that document expressly, explicitly, and clearly extends the release to "all other persons, firms or corporations who are or might be liable." It is equally of no moment that the defendants did not participate in the settlement negotiations or contribute any money towards the settlement because, as third party beneficiaries of the release, there is no requirement that the defendants furnish consideration for that release. See J. Denson Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui , 11 Tul.L.Rev. 18 (1936-1937).[3]
Moreover, there are other circumstances unique to this case that are not mentioned and that are, in my mind, significant. Foremost among those is the fact that the plaintiff signed the release directly below the following sentence, appearing in bold print in the document: "I have read this Release or had it read to me and understand it. " Justice Clark observes in his dissent what has been recognized for over a century: "signatures to [a document] are not mere ornaments," which statement reflects the principle of Article 2046. See Boullt v. Sarpy , 30 La.Ann. 494, 495 (La. 1878). A party who signs a written instrument is presumed to know its contents and cannot avoid its obligations merely by protesting that he did not understand the provisions. Maggio , slip op. at 2-3 (Clark, J., dissenting). This principle especially holds true in a case, such as this one, where the plaintiff had the advice and endorsement of counsel, who signed the document directly below the plaintiff. If the plaintiff did not wish to release his claims against the defendants herein, he could have simply refused to sign the release *883 as written or inserted a reservation of rights clause. He did neither.
The situation in which the plaintiff finds himself as a result of his failure to reserve his rights against the defendants herein is not an unsympathetic one. However, the resolution of this case, on the thin case of "unilateral mistake" presented by the plaintiff,[4] threatens to upset all compromises going forward and wreak havoc on the law favoring compromises. That resolution, moreover, is unnecessary, as it resorts to jurisprudence when there is a civil code article directly on point, which provides the solution to the issue presented. Because there are no relevant facts at issue, the matter should be resolved as a matter of law.
Finally, the document at issue is entitled "Final Release and Settlement of Claim." The result of the majority's resolution of this case is that there will now be a trial on the issue of intent, a trial which subverts the release's entire purpose-to clearly and explicitly conclude this litigation. The document entitled "Final Release and Settlement" is not now in any way final. (Emphasis added.)
I respectfully dissent from the majority opinion.
GUIDRY, J., dissents and assigns reasons.
I respectfully dissent from the majority opinion for the reasons assigned by Justice Clark.
Clark, Justice, dissents and assigns reasons.
For the reasons that follow, I respectfully dissent from the majority opinion. In this matter, we are asked to determine whether the unambiguous language of a compromise must be enforced as written. In conformity with established law, I answer affirmatively. As an initial (and notable) matter, the majority recognizes that the language of the contract is indeed unambiguous. However, it relies on a jurisprudential exception that allows extrinsic evidence to be considered to glean the parties' intent in entering into the contract and the scope of the matters compromised. See Brown v. Drillers, Inc. , 93-1019 (La. 1/14/94), 630 So.2d 741. In order to take advantage of this exception, the releasor must (1) have either been mistaken as to what he/she was signing or (2) not have fully understood the nature or the extent of the rights he/she was releasing. Id. I believe the majority's reliance on Brown to justify the examination of extrinsic evidence is against the very language therein which instructs courts to "confine their analysis to the four corners of the instrument" when the above categories are not met. For the following reasons, I do not believe the Brown exception should have been invoked, and, accordingly, I find any resulting consideration of parol evidence is inappropriate
First, I note that at the time the July 6, 2015 release was signed, the record reveals that plaintiff was aware of his claim *884 against the Sandwich King defendants, having just filed suit against them in the preceding weeks. The provision of the compromise which released "all other persons, firms or corporations who are or might be liable" is neither confusing nor ambiguous. A reasonable person signing a compromise with such language, knowing that he or she had just recently filed a lawsuit against defendants who were allegedly liable, would know that this provision would have the effect of releasing these defendants. Plaintiff now contends he did not fully understand the nature of the rights he was releasing; however, such a contention does not change the fact that he signed the release, which contained a provision that stated, "I have read this Release or had it read to me and understand it." In Aguillard v. Auction Management Corp. , 04-2804, p. 23 (La. 6/29/05), 908 So.2d 1, 17, this court explained that a person who signs a written instrument is presumed to know its contents:
It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him.See, e.g., Tweedel v. Brasseaux , 433 So.2d 133, 137 (La. 1983) (stating: "The presumption is that the parties are aware of the contents of writings to which they affixed their signatures ... The burden of proof is upon them to establish with reasonable certainty that they have been deceived." "If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done.") [emphasis added].
To allow a party to circumvent the provisions to which he contractually agreed, merely by protesting that he did not understand the provisions, undermines the essence of compromise agreements and could result in the real undoing of Louisiana contract law. As we explained in Lama v. Manale , 218 La. 511, 515, 50 So.2d 15, 16 (1950) :
Where there is a clause in a contract, and that clause is the agreement of the parties, the defense of a lack of knowledge of its existence is untenable. Courts are not created to relieve men of their bad bargains made. Where a clause of a contract is clear and unambiguous, "the letter of it should not be disregarded, under the pretext of pursuing the spirit." [emphasis added].
If the plaintiff wished to reserve his claims against the Sandwich King defendants he either could have declined to sign the release as written or inserted a reservation of rights. The plaintiff's subsequent representation that he was unaware of the broad scope of the provision, while potentially true and sympathetic, does not merit an abandonment of established Louisiana contract law, which requires clear and unambiguous language of contracts to be honored.
Second, the majority's willingness to wander outside of the four corners of the document in search of the party's intent is in contravention of previous cases, which have held similar releases to be clear and explicit (See Baudoin v. Montoya , 07-910 (La. App. 3 Cir. 1/30/08), 974 So.2d 877, writ denied , 08-479 (La. 5/2/08), 979 So.2d 1284 (expansive language in a settlement agreement settled and dismissed all claims against anyone arising out of an automobile accident, regardless of whether they were signatories to the settlement); Hudson v. Progressive Sec. Ins. Co. , 43,857 (La. App. 2 Cir. 12/10/08), 1 So.3d 627, writ denied , 09-235 (La. 3/27/09), 5 So.3d 148 *885 (broad language contained in a settlement agreement evinces intent to dismiss all claims against anyone arising out of the accident); Silva v. State Farm Mut. Auto. Ins. Co. , 09-686 (La. App. 5 Cir. 3/23/10), 38 So.3d 934, writ denied , 10-932 (La. 6/25/10), 38 So.3d 342 (holding a broad release was clear and unambiguous and evidenced an intent to release all parties liable for the accident); Palmer v. Walker , 09-756 (La. App. 5 Cir. 1/12/10), 31 So.3d 443 (plaintiff's failure to specifically reserve rights in a settlement agreement results in the release of all non-settling parties, including employers and insurers); Migliore v. Traina , 474 So.2d 980 (La. App. 5 Cir. 1985) (finding release language is so broad it clearly covers any liability of any persons whatsoever arising from the accident, in the absence of any attempt to limit the broad language of the release).
Based on the foregoing, I do not believe that either of the trigger requirements have been met to employ the Brown exception. Thus, based on the clear language of the settlement, the compromise should be enforced as written with no further consideration of extrinisic evidence.
Last, I disagree with the majority's view that the existence of a stipulation pour autrui cannot be established via summary judgment in this case. I find that all requirements for a third-party beneficiary contract are satisfied. (See , Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary , 05-2364, p. 9 (La. 10/15/06), 939 So.2d 1206, 1212, wherein the criteria are succinctly set forth.) Clearly the stipulation for a third party is manifestly evident, as the compromise explicitly provides for the release of "all other persons, firms, or corporation who are or might be liable." There is certainty as to the benefit provided the third party, as the compromise releases the third parties from further liability. Finally, the benefit is not a mere incident of the contract between plaintiff and Brenda Parker/Farm Bureau, but is in fact a separate and specific provision releasing all other persons. Accordingly, I would reverse and render judgment in favor of the defendants.

See La. C.C. art. 2 ("Legislation is a solemn expression of the legislative will."); La. C.C. art. 1, 1987 Revision Comment (c) ("In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law.").

Synonyms for unequivocal ("not subject to misinterpretation or to more than one interpretation") include: "clear, clear-cut, crystal clear, decided, ... evident, obvious, open-and-shut, ... plain, straightforward, ... unambiguous, unambivalent, unmistakable." See Merriam-Webster Thesaurus at merriam-webster.com (online 6/18/2018). Words related to unequivocal include: "comprehensible, ... graspable, ... understandable, ... simple, ... uncomplicated, ... discernible, ... black-and-white, explicit, ... well-defined, ... [and] readable." Id. The words "clear" and "explicit" are used in La. C.C. art. 2046.
While no relevant "absurd consequences" from the application of La. C.C. art. 2046 in this case have been noted, a complete, full, and final release of Brenda Parker and "all other persons, firms or corporations who are or might be liable" would protect her from a potential third-party claim based on negligent entrustment.

As Professor Smith explains:
There is nothing in the laws of this State or in the civil law background to our Code to indicate in any fashion that a third party beneficiary must furnish anything in the nature of consideration for the promise in his favor. The "consideration" for the promise is furnished by the promisee and the promise is binding for this reason.
Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui , 11 Tul.L.Rev. at 51.

Basically, the only fact presented by the plaintiff in favor of his position that he did not intend to release the defendants herein is that, following execution of the release, he continued to engage in discovery and did not dismiss his lawsuit against the defendants. However, as noted previously, weighed against this consideration is the fact that the plaintiff signed the release fully aware of his claim against the defendants, having filed suit a few weeks earlier. Given the clear and unequivocal language of the release, the only reasonable explanation for the plaintiff's subsequent conduct is that he simply did not read the release, despite his representations to the contrary. While unfortunate, it is not the role of the courts to relieve individuals of their own bad bargains. Lama v. Manale , 218 La. 511, 515, 50 So.2d 15, 16 (1950).