ROBERTS, J.,
for the Court:
¶ 1. Bobby Settlemires was involved in an on-the-job accident on September 12, 2008. As a result, he suffered a serious injury to his left leg. -Settlemires filed a petition to controvert, and Capital City Insurance Company (Capital City) filed its answer admitting the work-related injury but denying that Settlemires was permanently disabled. After a hearing before an administrative judge (AJ), Settlemires was awarded 87.5 weeks of permanent partial disability benefits for the fifty percent industrial loss of his lower left extremity. Settlemires appealed this decision to the Mississippi Worker’s Compensation Commission, which without any further elaboration, affirmed the AJ’s findings. Settle-mires appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. Settlemires had worked as a logger, either for his family business or himself, for the majority of his career. At the age of sixty-four, Settlemires still drove his logging truck and cruised timber. His work as a logger required him to climb on the loaded logs to remove tree limbs using a chainsaw. He also had to restrain the logs with cables and hooks. All of Settle-mires’s logging trucks and equipment had manual transmissions. Additionally, his job of cruising timber required him to walk across large tracts of land to evaluate timber for sale.
¶ 3. On September 12, 2008, the day of his injury, Settlemires’s logging truck was loaded with timber. Due to the wet ground conditions, another piece of equipment was going to push Settlemires’s truck through a soft, wet area. Unbeknownst to the driver of the other piece of equipment, Settlemires was standing in front of his truck removing some debris. The other driver began pushing the logging truck, which resulted in Settlemires being knocked to the ground, and the front tire of the logging truck rolling over his legs. Settlemires’s left leg received a severe crushing injury and a fibula fracture. That same day, Settlemires visited the emergency room in Corinth, Mississippi, where he briefly saw Dr. Randall Frazier, an orthopaedic surgeon. Settlemires again saw Dr. Frazier several days later. On February 4, 2009, Dr. Frazier performed an “excision, drainage, debridement and irrigation of a left calf hematoma” on Sett-lemires’s leg. Dr. Frazier released Settle-mires to work finding that he had reached maximum medical recovery on May 12, 2009. Subsequently, Settlemires attempted to find employment outside of the logging business. Settlemires briefly returned to logging, but found that he could no longer do the required work. He applied for numerous jobs through the Mississippi Department of Employment Security, the WIN Job Center, and Bruce Brawner, a licensed vocational-rehabilitation counselor, but had no success in obtaining new employment.
¶ 4. Shortly thereafter, Settlemires filed his petition to controvert on May 15, 2009. Capital City filed its answer admitting Settlemires suffered a work-related injury; however, it disputed that Settlemires had suffered from a permanent disability or that any such disability arose from an on-the-job injury. A hearing was held before an AJ on November 23, 2010. Settlemires testified that he still had pain and swelling in his leg due to fluid buildup caused by *791 standing and walking for more than two hours. He claimed that he could no longer haul timber or cruise timber due to the restrictions of his leg injury. Settlemires sold all of his logging equipment in 2010 and began drawing Social Security payments. At the time of the hearing, Settle-mires had been unable to secure employment anywhere else. Also at the hearing, Brawner testified by deposition. Brawner indicated that Settlemires would not be able to perform the work of a log-truck driver based on a review of Dr. Frazier’s deposition and that Settlemires’s age of sixty-seven years could be a factor preventing him from qualifying for jobs or adjusting to new jobs.
¶ 5. Dr. Frazier also testified by deposition. In his deposition, Dr. Frazier stated he had treated Settlemires on moré than one occasion. He first saw Settlemires on September 15, 2008, for treatment relating to Settlemires’s injured leg. Settlemires saw Dr. Frazier in November 2008 and was permitted to return to part-time work. At one point during his treatment of Sett-lemires, Dr. Frazier placed Settlemires in the hospital on February 2, 2009, to receive antibiotics through an IV, and then two days later, on February 4, 2009, Dr. Frazier performed an incision to drain the infected area. The following month, in March 2009, Dr. Frazier placed Settle-mires in a physical-therapy program and released him to work part-time driving the logging truck. Several months later, on May 12, 2009, Dr. Frazier placed Settle-mires at maximum medical improvement and assigned a five percent partial impairment to the lower left extremity. Dr. Frazier also stated that Settlemires would have to modify his activity level due to pain and swelling and limit his standing and walking to two hours per day. Further, Settlemires could no longer drive a standard-transmission truck and could only drive an automatic-transmission truck for short periods of time.
¶ 6. The AJ also heard from Dr. Cooper Terry, who performed an exam on Settle-mires at the request of Capital City. Dr. Terry stated Settlemires “received a permanent impairment from the injury and assigned him a [seven percent] permanent partial impairment to the lower left extremity.” He also placed permanent restrictions on Settlemires to only six hours of standing and walking per day. Climbing on unprotected heights was also not permitted.
¶ 7. On February 8, 2011, the AJ found that Settlemires suffered industrial loss to his lower left extremity of greater than five percent. The AJ noted that Settle-mires’s gait was “consistent with [Settle-mires] suffering pain and having a slight limp from the incident. Certainly no activities were reported that were inconsistent with the restrictions placed on [Settle-mires] by the physicians.” The AJ ultimately found that Settlemires’s industrial loss was fifty percent because he could still perform acts from his previous line of work, just for shorter periods of time, and he could perform jobs similar to his employment prior to being in the timber business; therefore, the AJ determined that Settlemires was entitled to receive 87.5 weeks of permanent partial disability benefits at $886.32 per week. A finding of one hundred percent disability would have entitled Settlemires to 175 weeks of payments. The AJ made no finding regarding whether Settlemires had created a rebut-table presumption of total occupational loss of a scheduled member.
¶ 8. Settlemires appealed this finding to the Commission, which affirmed the AJ’s findings on August 30, 2011. From this decision, Settlemires appeals claiming that “[t]he Mississippi Workers’ Compensation Commission erred by failing to award [him] a [one hundred percent] industrial loss of use to the lower left extremity.”
*792 ANALYSIS
¶ 9. On appeal, “[t]his Court will overturn a Commission decision only for an error of law or an unsupportable finding of fact.” City of Laurel v. Guy, 58 So.3d 1228, 1225 (118) (Miss.Ct.App.2011) (quoting Walker Mfg. Co. v. Butler, 740 So.2d 315, 320 (¶ 19) (Miss.Ct.App.1998)). The findings and order of the Commission are binding so long as they are supported by substantial evidence, and this Court is bound by the findings even though the evidence would convince us otherwise if we were the ultimate fact-finder. Id. (citations omitted).
¶ 10. Settlemires claims that he was entitled to a determination that he suffered a one hundred percent industrial loss to his lower left extremity, entitling him to 175 weeks of permanent partial disability benefits as opposed to the 87.5 weeks he was awarded. He submits that he presented sufficient proof to raise a rebutta-ble presumption of total occupational loss and that the Commission never addressed the presumption, nor did Capital City adequately rebut the presumption. We find that Commission erred in failing to address this presumption; therefore, we reverse and remand this case to the Commission.
¶ 11. The law compensates for two types of loss of use of a scheduled member. The first is the loss of the functional or medical use, and the second is the loss of the industrial or occupational use. Id. at 1226 (¶ 13). Industrial or occupational loss “is the functional or medical disability as it affects the claimant’s ability to perform the duties of employment.” Id. (quoting Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 745 (¶ 11) (Miss.2002)). This Court has explained:
In a scheduled-member case, a worker is always entitled to compensation for the medical or functional loss of his body part, regardless of whether the functional loss impacts his wage-earning capacity. But the law recognizes there may be times when the industrial loss is greater than the medical loss. In these cases, the “claimant’s industrial or occupational disability or loss of wage-earning capacity controls his degree of disability.”
Id. at (¶ 14) (citations omitted). In Jensen, 828 So.2d at 747-48 (¶ 21), the Mississippi Supreme Court discussed the rebut-table presumption that may be created when a claimant presents evidence that he is unable to continue to work in the position he held at the time of injury.
Where a permanent partial disability renders a worker unable to continue in the position held at the time of injury, we hold that such inability creates a rebuttable presumption of total occupation loss of the member, subject to other proof the claimant’s ability to earn the same wages which the claimant was receiving at the time of injury. The presumption arises when the claimant establishes that he has made a reasonable effort but has been unable to find work in his usual employment, or makes other proof of his inability to perform the substantial acts of his usual employment. Rebuttal is shown by all the evidence concerning wage-earning capacity....

Id.

¶ 12. In the present case, Settle-mires presented evidence that his primary occupation at the time of injury was that of a logger. There was testimony of two doctors that Settlemires could not return to logging full-time. Because Settlemires presented proof that he was “unable to continue in the position held at the time of injury,” we find that he was entitled to have the Commission address the presumption of total occupational loss of the *793 scheduled member. We do not address whether or not the presumption was raised and rebutted; rather, we simply find that based on the evidence presented, Settle-mires was at least entitled to have the Commission address the presumption. We leave the determinations of whether the presumption was raised and rebutted to the Commission on remand. Because the Commission did not explicitly address this presumption, we reverse and remand this case to the Commission for a determination of whether the rebuttable presumption was raised and, if so, whether Capital City adequately rebutted that presumption.
¶ 13. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.