# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 20-385

**RITA GARLINGTON WEEKLEY CHAPMAN LEGER, ET AL.**

**VERSUS**

**BANK OF NEW YORK MELLON, AS TRUSTEE OF THE GSAMP TRUST 2004-SEA-2**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. C-24670
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

**AFFIRMED.**

W. Alan Pesnell
Alan Pesnell Lawyer, LLC
120 E. Mark Street
Marksville, Louisiana 71351
(318) 717-2380
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Rita Leger
    Frances Leger

Amanda Stout
Johnathan G. Wilbourn
McGlinchey Stafford
301 Main, Suite 1400
Baton Rouge, Louisiana 70801
(225) 383-9000
COUNSEL FOR DEFENDANT/APPELLEE:
    Bank of New York Mellon, As Trustee on behalf of the Registered
    Certificate Holders of GSAMP Trust 2004-SEA-2 Mortgage Pass-Through
    Certificates, Series 2004-SEA-A

**SAVOIE, Judge.**

Plaintiffs Rita and Francis Leger appeal the judgment of the trial court, granting Defendant Bank of New York Mellon's motion for summary judgment and dismissing their claims with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 12, 1999, Rita and Francis Leger entered into a mortgage agreement with Bank One, N.A. for home improvements and re-financing of their home in Pollock, Louisiana. The mortgage secured a promissory note executed by the Legers in the principal amount of $85,125.00. Under the terms of the note, the Legers were responsible for making payments monthly in the amount of $692.92 for 179 months, commencing February 12, 2000, with a balloon payment of the outstanding principal amount and accrued, unpaid interest due and owing on January 12, 2015. The promissory note was subsequently transferred from Bank One to Bank of New York Mellon on March 31, 2004.

The Legers subsequently filed for bankruptcy, and on December 7, 2009, the bankruptcy court entered an order declaring the mortgage current through July 2009. The bankruptcy court further ordered:

> [T]hat the debtor shall resume making regular monthly mortgage payments directly to MORTGAGE CREDITOR beginning with the payment due for AUGUST, 2009, and the Trustee is relieved of any further obligations under the plan to make payments to the Secured Creditors after the disbursement of JULY 31, 2009.

The Legers' last payment on the mortgage loan was March 25, 2010. On October 26, 2011, Bank of New York Mellon commenced executory process and foreclosure proceedings on the property.

The Legers filed a Petition to Rescind Contract on January 30, 2017. The Legers contend that they never agreed to a balloon note and that "[t]here has been a

substantial error affecting the consent of [the Legers] to this loan contract and the accompanying mortgage." On February 3, 2020, Bank of New York Mellon filed a motion for summary judgment alleging that the Legers cannot show that they are entitled to rescission of the loan agreement or a cancellation of the mortgage. The trial court entered judgment in favor of Bank of New York Mellon on March 18, 2020. The Legers now appeal.

## ASSIGNMENTS OF ERROR

1. The trial court erred in finding that the parties agreed to a balloon note and that there was no error present given the evidence before the court.

2. The trial court erred in concluding that Bank of New York Mellon was a holder in due course.

3. The trial court erred in considering the Louisiana Credit Agreement Act.

## LAW AND DISCUSSION

I. *Motion for Summary Judgment Standard of Review*

This court in *Bourque v. Tony Chachere's Creole Foods of Opelousas, Inc.*, 20-371, p. 3 (La.App. 3 Cir. 10/28/20), 305 So.3d 949, 952, *writ denied*, 20-1372 (La. 1/26/21), 309 So.3d 347, explained:

> Appellate courts review motions for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. The reviewing court, therefore, is tasked with determining whether, "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more

2

elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La.Code Civ.P. art. 966(D)(1).

## II.    *Assignment of Error Number One*

The Legers first complain that the trial court erred in finding that the parties agreed to a balloon note and that there was no error present.  On this issue, the trial court explains in its written reasons:

> While consent may be vitiated by error, error only vitiates consent when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.  La.C.C. art. 1949; *Peironnet v. Matador Resources Co.*, 2012-2292 (La. 6/28/13), 114 So.3d 791, 807.  In determining whether to grant rescission, courts have considered whether the error was excusable or inexcusable, granting relief when error has been found to be excusable. *Peironnet*, 144 So.3d at 810. Applying the legal principles here, [Bank of New York Mellon] correctly argues that the purported error involves not the cause of the contract but the repayment terms.  The purpose of obtaining the loan was to refinance and make home improvements; that was accomplished.  The alleged error concerning the payment terms was unilateral, if it occurred, given the terms of the written agreements clearly provided the loan was amortized at a fixed interest rate of 8.99% with a balloon payment due on Jan. 12, 2015.  The Legers simply assert that they did not read the written documents they signed.  This is not excusable error upon which relief can be granted. *See Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La. 1983).

The Legers argue that they did not agree to a balloon note and that they believed the loan would amortize in fifteen years.  It is the Legers contention that there was no meeting of the minds, and the issue is not ripe for summary judgment because the factfinder must judge their mental state at the time of the signing of the contract.

The Legers both testified that they would not have taken the loan had they known it was a balloon note.  They further testified that they were told that the loan was a straight amortization loan, and they relied on those representations at closing.

3

The Legers claim that, at the closing, a mass of documents was slid their way, and they signed where they were told to sign.

The Bank One Promissory Note dated November 12, 1999, and signed by both Rita and Francis Leger lists the principal amount of the loan as $85,125.000, with an interest rate of 8.99%. The first two paragraphs of the note state:

> PROMISE TO PAY. I promise to pay to the order of Bank One, NA ("Lender"), the sum of Eighty Five Thousand One Hundred Twenty Five & 00/100 Dollars (U.S. $85,125.00), together with simple interest at the rate of 8.990% per annum assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on November 17, 1999 and continuing until this Note is paid in full.
>
> PAYMENT. This Note shall be payable as follows: The principal of and interest on this Note shall be due and payable in 179 equal monthly installments in the amount of $692.92 each, commencing on February 12, 2000, and continuing on the same day of each month thereafter, with one final installment in the amount of the principal balance then outstanding, together with all accrued but unpaid interest, being due and payable on January 12, 2015. The amount of each of the foregoing scheduled payments includes principal and interest. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. The finance charge shown above is based on the assumption that I will make payments exactly on the date scheduled. If I pay early, the finance charge I pay may be less than the amount shown. If I pay late, the finance charge that I pay may be more than the amount shown. I will pay Lender at the address designated by Lender from time to time in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

In addition to the Bank One Promissory Note, Rita Leger signed a Disclosure Statement with Bank One which lists the amount financed as $81,286.00.[1] Also listed in the document is a finance charge of $111,806.75. The

---

[1] This amount represents the note principal ($85,125.00) less prepaid finance charges ($3,839.00).

finance charge is defined as "[t]he dollar amount the loan will cost me." The Disclosure Statement states clearly that the total amount of the payments, defined as "[t]he amount I will have paid after I have made all payments as scheduled," is $193,092.75. It explains the payment schedule "will be 179 monthly payments of $692.92 each, beginning February 12, 2000, and one final payment of $69,060.07 on January 12, 2015."

While the Legers contend that they "never agreed to nor would [they] have ever agreed to a "balloon note," the documents show that is exactly what they did. In the Disbursement Request and Authorization signed by both Francis and Rita Leger on November 12, 1999, the "LOAN TYPE" is listed as "a Fixed Rate (8.990%), *Balloon Loan* to a Consumer for $85,125.00 due on January 12, 2015." (Emphasis added).

The Legers argue that a substantial error occurred which vitiates their consent to the contract, and, as a result, the contract should be rescinded. "A contract is formed by the consent of the parties established through offer and acceptance." La.Civ.Code art. 1927. "Consent may be vitiated by error, fraud, or duress." La.Civ.Code art. 1948. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La.Civ.Code art. 1949.

The terms of a contract may not be modified unilaterally. *Semco, LLC v. Grand Ltd.*, 16-342 (La.App. 5 Cir. 5/31/17), 221 So.3d 1004, *writ denied*, 17-1291 (La. 11/6/17), 229 So.3d 475. However, when consent is vitiated by error, "[r]escission is permitted even where the error is unilateral." *Id.* at 1030. For this to occur, "the error must be excusable, meaning 'the party in error did not fail to take elementary precautions that would have avoided his falling into error[.]'" *Id.*

(quoting *Peirronet v. Matador Resources Co.*, 12-2292, p. 23 (La. 6/28/13), 144 So.3d 791, 810). The particular circumstances of each case determines whether a unilateral error is excusable. *Id.* "Contractual negligence, *such as failure to read a contract one signed*, is not excusable and, thus, rescission is not an appropriate remedy." *Id.* at 1030 (emphasis added).

In *Tweedel v. Brasseaux*, 433 So.2d 133 (La. 1983), the plaintiffs filed a Petition to Rescind the Donation, alleging their niece was instructed to obtain wills in her favor but, rather, obtained donations, which plaintiffs were not allowed to read. The trial court ruled that the documents should be rescinded because the plaintiffs did not know what they were signing and did not have the document explained to them. The appellate court affirmed. The Louisiana Supreme Court, however, reversed the lower courts, explaining:

> Plaintiffs argue that they intended to sign wills rather than donations. However, this claim is supported only by the testimony of Mr. and Mrs. Tweedel and to a small extent by Mrs. Elliot. The Tweedels knew the documents were intended to be executed on three occasions in three different years. Elliot, an impartial witness, was told by the Tweedels that they were *giving or deeding land over a period of time to avoid inheritance taxes.* The Tweedels told the notary they understood what they were signing, but, most important, is the language of the instruments themselves. The acts are clearly titled "Donation Inter Vivos from George Thomas Tweedel & Lillian Fontenot Tweedel to Hester Tweedel Brasseaux, et als"; they state that the Tweedels own property in St. Landry and Acadia Parishes; that they are making donations to their relatives and that they reserve the right to use and usufruct of the property during the term of their natural life. The acts also say in paragraph six that the amount donated constitutes only a small portion of the Tweedels' estate and that they have reserved amply for their subsistence. (Tr. 55)

> "[S]ignatures to obligations are not mere ornaments." *Boullt v. Sarpy,* 30 La.Ann. 494 at 495. Additionally, the courts of our state have long held that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentatively [sic] whilst this is being done." *Snell v. Union Sawmill Company,* 159 La. 604 at

608, 105 So. 728 at 730 (1925). *Bagneris v. Oddo,* 2 Pelt. 278 (La.App.1919) held:

> "The presumption is that parties are aware of the contents of writings to which they have affixed their signatures ... The burden of proof is upon them to establish with reasonable certainty that they have been deceived." 2 Pelt. at 285.
>
> Therefore, the Tweedels have not established that they erred by not understanding or intending the donations. The conclusions to the contrary by the trial court and the court of appeal are clearly wrong.

*Tweedel*, 433 So.2d at 136-37.

Similarly, in the present case, the Legers testified in their affidavits that they would not have taken the loan had they known it was a balloon note. The Legers contend that at the closing "no one explained the documents to them, but instead, they slid a mass of documents to them and told them where to sign on an industrial basis." *Tweedel* makes it clear that these allegations do not establish an error which would vitiate the contract. The re-financing documents clearly set forth the repayment terms, and these documents were signed by the Legers. Accordingly, we find no genuine issue of material fact.

### III. Assignment of Error Number Two

Next, the Legers complain that the trial court erred in finding Bank of New York Mellon is a holder in due course. In accordance with La.R.S. 10:3-302, a holder in due course is defined as the holder of an instrument if:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has

7

been altered, (v) without notice of any claim to the instrument described in R.S. 10:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in R.S. 10:3-305(a).

The trial court found that:

> BONY is the current owner and holder of the Note, which is endorsed "Pay to the Order of the Bank of New York Mellon . . . without recourse, Bank One, NA." Full value was given in the amount of $85,125.00. *See* Prudent Affidavit, Exhibit 1 to MSJ. The Note was given in good faith, contains no signs of forgery, had not been dishonored, was not in default; and was due for March 2004 payment. *Id.* Plaintiff's Responses to Defendant's Statement of Uncontested Material Facts admit that at the time the Note was endorsed to BONY in March 2004, the Note was not overdue, had not been dishonored, and was not in default. The Legers admit the purpose for obtaining the loan was to refinance their mortgage and [to] pull out equity for home improvements, which purpose was accomplished. Accordingly, BONY is holder in due course of the Note. As a holder in due course, BONY is not subject to the personal defense of error. La. R.S. 10-3-305. Accordingly, BONY is entitled to summary judgment in its favor.

The Legers argue that the note has patent defects on its face, and the ability to determine the final payment terms is not ascertainable without reference to other documents. It is their position that this defect defeats Bank of New York Mellon's holder in due course status.

The Legers cite *SFC Acceptance Corp. v. Spain*, 251 La. 902, 207 So.2d 364 (1968), in support of their claim that Bank of New York Mellon is not a holder in due course. In that case, blanks in the payment schedule made it impossible to determine the time of payment. The supreme court opined:

> The requirement in La.R.S. 7:52(1) that the note must be 'complete and regular on its face' for the party who has taken it to be a holder in due course means that it must be complete within its eight corners, Morris v. Cain's Executors, 39 La.Ann. 712, 1 So. 797, 2 So. 418 (1887); and its completeness and regularity, for the purpose of determining whether the holder is a holder in due course, cannot be aided by extraneous evidence of any kind. Wilkins v. Reliance Equipment Co., 259 Ala. 348, 67 So.2d 16 (1953). The note in question is separable from the mortgage by the perforated line and could therefore be detached without mutilation. This, together with the printed words 'Detach Note Before Filing' appearing at the foot of

the sale and chattel mortgage, clearly indicated a studied design to make them separable. These factors, combined with the general appearance of the documents, establish unmistakably that they were to be treated as two separate instruments. For these reasons, whether the note was 'complete and regular on its face' depends upon what appears within its eight corners—the face of the note—unaided by any reference to the sale and chattel mortgages or the schedule of payments attached to the sale and chattel mortgage.

We are of the opinion that the note is not complete and regular on its face because the blanks in the 'Schedule of Payments' make it impossible to determine the time of payment without reference to the sale and chattel mortgage and thereafter to the schedule of payments attached thereto; that is, it cannot be ascertained from its eight corners that it is payable 'at a fixed or determinable future time', as it should be to make it regular in accordance with the requirements of La.R.S. 7:1.

This holding does not mean that the note is invalid, or that plaintiff, who is in possession of the note, may not consider it a demand note for the purposes of collection (La.R.S. 7:7), or complete the blanks to show the installment payments and thereby render the note negotiable, (La.R.S. 7:14), or establish the time for payment by reference to the schedule of payments attached to the sale and chattel mortgage. We do not pass upon these questions. Our holding simply establishes that plaintiff is not a holder in due course because when it received the note it contained blanks where the installment payments should have been, and it had no determinable date of payment. Consequently, plaintiff holds the note subject to 'the same defenses as if it were non-negotiable.' La.R.S. 7:58. Remedial Plan, Inc. v. Ott, 199 Ky. 161, 250 S.W. 825 (1923); In re Philpott's Estate, 169 Iowa 555, 151 N.W. 825 (1915).

In the present case, the note is complete and regular on its face. It clearly establishes the principal amount ($85,125.00) and interest rate (8.990%) multiple times throughout the note. The loan date, maturity date, and loan number are all listed. The note states:

PROMISE TO PAY. I promise to pay to the order of Bank One, NA ("Lender"), the sum of Eighty Five Thousand One Hundred Twenty Five & 00/100 Dollars (U.S. $85,125.00), together with simple interest at the rate of 8.990% per annum assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on November 17, 1999 and continuing until this Note is paid in full.

PAYMENT. This Note shall be payable as follows: The principal of and interest on this Note shall be due and payable in 179 equal monthly installments in the amount of $692.92 each, commencing on February 12, 2000, and continuing on the same day of each month thereafter, with one final installment in the amount of the principal balance then outstanding, together with all accrued but unpaid interest, being due and payable on January 12, 2015. The amount of each of the foregoing scheduled payments includes principal and interest. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. The finance charge shown above is based on the assumption that I will make payments exactly on the date scheduled. If I pay early, the finance charge I pay may be less than the amount shown. If I pay late, the finance charge that I pay may be more than the amount shown. I will pay Lender at the address designated by Lender from time to time in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

Based on the evidence before us, we find Bank of New York Mellon is a holder in due course of the note in question. This assignment has no merit.

IV.  *Assignment of Error Number Three*

Finally, the Legers argue that the trial court erred in considering the Louisiana Credit Agreement Act, La.R.S. 6:1122-1124. They contend that the statutory scheme is inapplicable because the action does not seek to enforce an oral credit agreement. Bank of New York Mellon explains that the Legers appeared to assert a claim for detrimental reliance in their petition, which prompted Bank of New York Mellon to move for summary judgment on this claim. Bank of New York Mellon points out that, in the Legers' opposition to its Motion for Summary Judgment, they "affirmed they were making this claim, stating that their 'claim of detrimental reliance is completely with merit.'" The Legers went on to argue that "[they] have been damaged by their reasonable reliance on the promises of Bank One and its successors." They further claimed that "BONY made promises to the

10

Legers when they accepted the endorsement on the Note in question." As such,

Bank of New York Mellon asserts that it was entirely appropriate for the trial court

to rule on this issue as it was part of its Motion for Summary Judgment. The trial

court ruled:

> The Legers have also claimed that during the origination and subsequent collection of the Note, that loan officials have stated terms contrary to the written terms or acknowledged "problems" with the loan. An agreement of a creditor to not take certain actions, such as forbearing from exercising remedies under a credit agreement, does not give rise to a claim that a new credit agreement was created unless the agreement is in writing, expresses consideration and is signed by the debtor and creditor. The Louisiana Supreme Court has held that the cumulative effect of [the] La. Credit Agreement Statute is to bar all actions for damages arising from oral credit agreements regardless of the legal theory of recovery asserted. *Jesco Const[r]. Corp. v. Nationsbank Corp.*, 2002-0057 (La. 10/25/02), 830 So.2d 989, 991.

In *Whitney National Bank v. Rockwell*, 94-3049, pp. 10-11 (La. 10/16/95),

661 So.2d 1325, 1331 (footnote omitted), the Louisiana Supreme Court explained:

> The Louisiana Legislature in 1989 enacted La.Rev.Stat. 6:1121–1124, which in effect provides a statute of frauds in actions based on credit agreements as defined in the statute. The Louisiana statute is modelled after the Minnesota statute, discussed above.
>
> La.Rev.Stat. 6:1121 is a definitional section that defines the key terms. The pertinent term here is "credit agreement," which is defined as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make other financial accommodation."
>
> La.Rev.Stat. 6:1122 expressly prohibits an action against the creditor based on an oral credit agreement, providing that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth relevant terms and conditions, and is signed by the creditor and the debtor."
>
> La.Rev.Stat. 6:1123 A addresses specific actions by the lender that "shall not give rise to a claim that a new credit agreement is created." Pertinent among the activities that do not give rise to a new credit agreement are "[t]he agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement." 5 La.Rev.Stat. 6:1123 A(3). This section in effect treats certain actions

11

or representations of creditors as if they were credit agreements and requires that they be put in writing to be enforceable.

In *Whitney*, an oral credit agreement between the bank and guarantor, under which parties allegedly agreed that guarantors and principals would close another loan in thirty days and then retire the debt owed to the bank, was not enforceable. *Id.* The supreme court determined that the credit agreement statute precluded debtors from maintaining an action on a credit agreement unless the agreement was in writing. *Id.*

In the present case, the Legers only complain that the Louisiana Credit Agreement Act was considered. While the note at issue was in writing, the Legers allege that they detrimentally relied on the bank's oral assertions that the note was a straight amortization loan. Therefore, it was properly relied on in ruling on the motion for summary judgment. We find this assignment without merit.

## CONCLUSION

The judgment of the trial court is affirmed.

**AFFIRMED.**